## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

KARLA COREA,

                 Plaintiff

        v.

STEVEN NEGRON,
NEIL LAWRENCE,
and CITY OF SUNRISE, FLORIDA,

              Defendants.

_____/

FILED by _____ D.C.

JAM 09 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

Case No.

**JURY TRIAL DEMANDED**

17-CV-60047-BLOOM/VALLE

## COMPLAINT

AND NOW COMES the Plaintiff, Karla Corea ("Corea"), for her complaint, and avers and states:

### parties

1. The Plaintiff is Karla Corea ("Corea"), an individual. Corea is a citizen of the Republic of Nicaragua. Corea maintains a legal residence in Arkansas. For the purpose of this action, Corea will use the following mailing address: 382 NE 191st Street, #10287, Miami, FL 33179-3899. The mailing address is not a residence and does not establish citizenship within Florida. Rather, it is used for receiving mail promptly related to this litigation.

2. Defendant Steven Negron is an individual employed by the Sunrise Police Department as a police officer. Negron is being sued in his individual capacity.

1

3. Defendant Neil Lawrence is an individual formerly employed by the Sunrise Police Department as a police officer. Lawrence is being sued in his individual capacity.

4. Defendant City of Sunrise, Florida, is a political subdivision of the State of Florida. It has waived sovereign immunity pursuant to Florida Statute 768.28(1) and 768.28(5).

## JURISDICTION

5. This Court maintains jurisdiction over this case pursuant to 28 USC 1331, 28 USC 1343, and 42 USC 1983 as this lawsuit is based on the infringements of the rights of the plaintiff under the Constitution of the United States and its amendments by the defendants, individuals, who acted under the color of state law. Jurisdiction also exists pursuant to 28 USC 1332 in that the amount of controversy exceeds $75,000 and the plaintiff and the defendants are citizens of different states, the defendants being citizens of Florida and the plaintiff being a citizen of the Republic of Nicaragua and the State of Arkansas. Jurisdiction over the common law claims may be accepted by this Court pursuant to 28 USC 1367.

## ALLEGATIONS COMMON TO ALL COUNTS

6. Paragraphs 1 through 5 are hereby incorporated by reference and are restated as if fully set forth again.

7. Based on information, on or about December 9, 2014, an Apple iPhone 6+ was purchased from a kiosk at the Sunrise Mall in Sunrise, Florida. The kiosk was operated by Alan M. Dancour, Valery Carolina Mata, Ricardo Bravo, Luis A. Barrios, C&S Cellular Technology LLC d/b/a Unlocked GSM Phones and

Repairs d/b/a Unlocked GSM World Phones, GSM World Phones Inc., GSM Unlock Phones Inc., Mojo Mobile, Inc., Electronic Investments Inc., Easy Wireless Mobile Phone Inc.,  Mi Phone Inc., and Security and Spy Systems Inc.

8. Based on information, part of the December 2014 transaction was paid in cash and the other part on a credit card.

9. Based on information, the kiosk operators received payment for the credit card transaction from their credit card processor in December 2014.

10. Based on information, at no time did the kiosk operators receive any form of "dispute" or "chargeback" related to the credit card transaction.

11. On or about January 7, 2015, plaintiff visited one of the kiosks as the Sunrise Mall in Sunrise, Florida.

12. Plaintiff agreed to purchase a telephone.

13. Plaintiff agreed to pay for the transaction using a Visa credit card that was signed on the back by plaintiff, but which listed a third-party's name on the front of the card.

14. Knowing that the signature on the back of the card did not match the name on the card, the kiosk operators processed the transaction through a credit card point of sale terminal, and received full authorization for the purchase.

15. After processing the transaction and receiving authorization, the kiosk operators surreptitiously obtained the identification documents of the plaintiff and held her at the store by withholding her travel documents.

16. Plaintiff directed the kiosk operators to cancel the purchase for the telephone and to annul the credit card transaction.

17. Plaintiff directed the kiosk operators to return her passport and stated that she would dispute the transaction with the bank if not refunded.

18. The kiosk operators refused to return plaintiff's passport, effectively causing plaintiff to be unable to leave the premises.

19. Plaintiff could not abandon her passport as she had an international flight the next morning to Managua, Nicaragua.

20. The kiosk operators called the Sunrise Police Department, all while holding plaintiff's identification documents.

21. The City of Sunrise, through its agent Negron arrived at the scene.

22. Negron and the City of Sunrise detained plaintiff, refused to allow her to leave, but did not arrest her.

23. Based on information contained in a police report authored by Negron and the City of Sunrise, the defendants contacted Chase Bank.  Defendants claim that the bank operator told them that the plaintiff was not "listed" as an authorized user.

24. Chase Bank never claimed or asserted that the cardholder did not authorize plaintiff to possess or use the card pursuant to the terms of the cardholder agreement.  (Rather, Chase only conveyed that nobody requested an additional card for plaintiff).

25. Neither Negron nor the City of Sunrise inquired to Chase Bank whether the terms of the agreement allowed a cardholder to provide their credit card and account number to a third party.  Had they done so, they would have learned that the cardholder agreement stated, "If you allow someone to use your

account, that person will be an authorized user. You should think carefully

before allowing anyone to become an authorized user because you are allowing

that person to use the account as you can. You will remain responsible for the

use of your account and each card issued on your account according to the terms

of this agreement. This includes your responsibility for paying all charges on

your account made by an authorized user. You may request an additional card

for use by an authorized user on your account...."

26. Neither Negron nor the City of Sunrise took steps to contact the person whose
    name was listed on the card.

27. Nevertheless, according to Negron and the City of Sunrise's police report, they
    arrested plaintiff pursuant to FSS 817.568-2a and stated that there was
    "probable cause to believe that [plaintiff] did willfully and without authorization
    fraudulently use personal identification information (credit card) concerning an
    individual without first obtaining that individual's consent."

28. However, after receiving a telephone call from a relative of the cardholder,
    Negron called the bank again and Chase Bank clarified that the cardholder
    authorized the use and possession of the card by plaintiff and that the
    cardholder added plaintiff as an additional cardholder.

29. According to the police report of Negron and the City of Sunrise, "The probable
    cause for fraudulent use of personal information had diminished, therefore the
    criminal charge was removed."

30. But this did not end the detention of the plaintiff.

31. Rather, during an unconstitutional and non-consensual search of plaintiff's

purse contents, Negron and the City of Sunrise located the Apple Iphone 6+ purchased by a third party on December 9, 2014.

32. Negron and the City of Sunrise showed the telephone to the kiosk operators.

33. The kiosk operators, without defining fraud or explaining any facts, asserted that the telephone was purchased "fraudulently" from them.

34. The kiosk operators vaguely claimed that the purchase was "charged back" by the bank that issued the credit card, but the term "charged back" was never defined or explained by the kiosk operators.

35. According to the City of Sunrise and police report authored by Negron, "The bank had issued a chargeback for $1,049.00. $850 was applied to the card fraudulently; the difference of $199.40 was paid in cash."

36. Based on these vague claims by the kiosk operators about a "fraudulent purchase" and a "chargeback," according to the police report, "[Negron] informed [plaintiff] that she is being additionally charged for possessing the Apple Iphone 6+ that was unlawfully deprived from Unlocked GSM Phone and Repairs kiosk of 12/09/14."

37. Neither Negron nor the City of Sunrise claimed in the police report that the plaintiff knew about any purported fraudulent purchase in December 9, 2014.

38. Neither Negron nor the City of Sunrise claimed in the police report that the plaintiff purchased the telephone in December 2014. Rather, Negron wrote that the kiosk operators "recognize[d] [an] unknown male [who walked away] as a suspect from a fraudulent purchase conducted last month."

39. Negron never asserted in the City of Sunrise police report that he had evidence

that plaintiff "intentionally" or knowingly possessed the telephone with the intent to deprive the kiosk operators of the right to possess it, as required to charge somebody with theft.

40. Notwithstanding never having identified any involvement of the plaintiff as to the December 2014 sale, plaintiff was transported and lodged in pretrial detention for grand theft by Negron and the City of Sunrise.

41. Negron appeared in front of a notary public, Roger Luly, and swore a purported affidavit of probable cause. The affidavit stated:

> [Plaintiff] was in possession of a cellular phone valued at $990.00 that was purchased fraudulently on 12/09/14, to wit: The [plaintiff] was taken in custody for attempting a purchase of $837.40 at the Sawgrass Mills Mall. The [plaintiff] was not an authorized user of the card. Prior to informing the [plaintiff] her Miranda rights, she stated that she wants to speak with an attorney. The [plaintiff] was taken into custody and her belongings inventoried. During the inventory, I wrote down the serial number to an Apple iPhone 6+ that was located in the [plaintiff's] purse. The iPhone 6+ serial was the same as a phone purchased fraudulently on 12/09/14. That fraudulent purchase was conducted by an unknown accomplice that was with the [plaintiff] prior to law enforcement arrival. Unlocked GSM Phones and Repairs manager Luis Barrios researched the prior transaction and confirmed that it was purchased fraudulently and the bank had issued a chargeback. About 15 minutes after taking the [plaintiff] into custody, she received a phone call. The [plaintiff] advised that the caller is her associate that left her at the store. She requested for us to answer the phone. The caller was placed on speaker phone and he said, "have the police check the bank again, you are an authorized user." I contacted the bank again and they informed me that the [plaintiff] was added as an authorized user within the past 5 minutes. The [plaintiff] was unarrested for the criminal use of personal information; however, she was still in custody for possession of the property purchased fraudulently. The [plaintiff] still request to speak with an attorney. The [plaintiff] was charged with grand theft of the phone and transported to BSO jail.

42. At no time did Negron claim to have reviewed any "chargeback" from the bank.

43. At no time did Negron investigate the reason for the alleged "chargeback" from the bank. Indeed, a chargeback may be issued for myriad reasons including

false representations, warranty issues, and other merchant disputes.

44. Had Negron investigated or requested to review the chargeback documents, he would have discovered that no chargeback ever occurred and that the kiosk operators received full payment for the telephone.

45. After plaintiff was lodged by Negron in jail, she was never provided any opportunity to have the affidavit of probable cause reviewed for sufficiency by a judge.

46. At no time did a judicial officer ever find any probable cause as to the plaintiff.

47. Rather, plaintiff was provided an automatic bond of $1,000 without judicial review of her detention.

48. Even after plaintiff's associates posted her bail, she remained in custody for six more hours because of slow processing by jail workers.

49. The plaintiff returned to Nicaragua on or about January 9, 2015.

50. A few days later, notwithstanding that the plaintiff neither was convicted of a crime nor had a judicial officer find probable cause that she committed a crime, the United States Department of State summoned her to the United States Embassy at Managua, Nicaragua, and revoked her multiple entry visa to the United States.  The revocation was based on the arrest by Negron.  There is no procedure that allows a person to have judicial or administrative review of a visa revocation.

51. On or about February 4, 2015, the Office of the State Attorney filed a "no information" in the criminal case against plaintiff, effectively dismissing the charges for lack of probable cause.

52. After the case against plaintiff terminated in her favor, she requested that the Sunrise Police Department return her telephone.

53. However, because plaintiff could not appear in person, she requested that the police provide the telephone to a person she assigned power of attorney to. In the alternative, she requested that the police mail her the telephone at her own expense.

54. Considering that the police erroneously arrested her and improperly seized her property, resulting in the revocation of her visa, the request for accommodation was more than reasonable.

55. The matter was assigned to Neil Lawrence, who at the time was a detective with the Sunrise Police Department.

56. It was explained to Lawrence and the City of Sunrise that the plaintiff was unable to come to the United States to retrieve the telephone.

57. Lawrence refused to make any accommodations to accept a power of attorney or to mail the telephone to the plaintiff at her own expense.

58. Rather, Lawrence insisted that the only way for plaintiff to obtain the telephone was to personally appear at the police station or to obtain a court order.

59. Of course, obtaining a court order while in Nicaragua for a telephone valued at under $1,000 would be cost burdensome and difficult considering that plaintiff could not attend any hearing in Florida and would need an interpreter to fully understand the proceedings.

60. Because of the defendants' unreasonable refusal to return the telephone to the plaintiff by means other than personal appearance -- when such an appearance

was impossible due to plaintiff's visa status, she could not obtain the telephone until August 2016 when she was granted residency status.

## SOME OF THE DAMAGES CAUSED FROM THE INCIDENTS

61. Plaintiff was not merely charged and given a summons or directive to appear.

62. Rather, Negron and the City of Sunrise arrested the plaintiff and took her into pretrial detention.

63. Plaintiff was never afforded a hearing into the probable cause of her detention.

64. Rather, approximately fifteen (15) hours after her arrest, an automatic bond of $1,000 was set.

65. Plaintiff's associates immediately posted the bond when it was issued almost six hours after the plaintiff was detained, but it still took approximately seven (7) more hours for plaintiff to be released from custody.

66. Because of the detention, plaintiff missed her international flight.

67. Because of Negron's actions, plaintiff's associates had to: (1) Extend a car rental; (2) Purchase a hotel; (3) travel to Fort Lauderdale to post the bond; and (4) travel to the jail to retrieve plaintiff.

68. Plaintiff had to reimburse these expenses to her associates.

69. After rescheduling her flight and incurring expenses as a proximate result, plaintiff returned to Nicaragua.

70. Several days after arriving in Nicaragua, plaintiff received a telephone call from the assistant consul of the United States Embassy at Managua, Nicaragua, summonsing her to the embassy.

71. In January 2015, after appearing that the United States Embassy in Managua,

the Assistant Consul to Nicaragua informed plaintiff that, as a result of the arrest by Negron, a non-appealable, non-reviewable decision was made to revoke plaintiff's ten year multiple entry B1/B2 visa.

72. As a result, plaintiff could no longer travel to the United States. This prevented the Plaintiff from being able to visit relatives in the United States including her uncle, father in law, nephews and nieces, and sister in law. It also prevented plaintiff from using the United States as a travel hub to reach other destinations, increasing the cost of travel to third countries by having to fly on more expensive airlines that do not touchdown in the United States.

73. Also in January 2015, various scandalous websites on the internet purchased the mugshots of plaintiff and plastered them on various websites. Using search engine optimization, the websites showed plaintiff's mugshot and the arrest information as the top result when her name was keyed into Google.com, Ask.com, Yahoo.com, and Bing.com.

74. Plaintiff paid over $300.00 to have the top ranking websites remove the arrest information.

75. However, tens of other websites continue to display the arrest information along with plaintiff's photograph.

76. This information caused plaintiff considerable distress and damage to her reputation and can and will affect her business career as a licensed attorney in the Republic of Nicaragua and in the United States.

77. Plaintiff may, and intends to attempt to (after the discovery portion of this lawsuit is complete), have the arrest records expunged. However, this will

require a trip to Florida and the payment of a $75 fee and the filing of a court proceeding. The prospective petition to expunge may or may not be granted.

78. On or about February 11, 2015, plaintiff was traveling to Aruba. Because her United States Visa was revoked as a result of the arrest at the instigation of the defendants, the only country plaintiff could transit through to Aruba was Panama. Upon landing in Panama, two police intelligence officers were standing outside of the plane waiting for plaintiff. The Panamanian officers detained plaintiff and took her to a room. The intelligence officers received a report from the United States that her visa was revoked as a result of the arrest. The Panamanian police demanded plaintiff show documents evidencing the dismissal of the case against her. Plaintiff was required to recount, explain, and justify the arrest before being allowed to enter the transit area of Panama or be admitted into Panama. Plaintiff's detention lasted over one hour. The detention was extremely stressful.

79. In February 2015, a relative of plaintiff petitioned for status as a lawful permanent resident with the United States Citizenship and Immigration Services ("USCIS"). Plaintiff applied for permanent residency. Average processing time for such a petition and application is about five (5) months before approval.   However, in July 2015, it was learned that that USCIS "placed [plaintiff's] case on a processing hold because the required security checks remain pending. Until we receive the results of these security checks, we cannot move forward on your case. We require the results of security checks before we make a decision on any pending case." It was not until June 2016 that the

background checks cleared.  Based on information, this delay of almost one year

past the standard processing times were the result of the arrest and detention of

the plaintiff at the instigation of the defendants.  The USCIS needed to

investigate the background and verify the dismissal of the case.  This prevented

the plaintiff from entering the United States to travel or visit friends and

relatives.

80. In July 2016, plaintiff finally received her United States Visa.

81. On August 17, 2016, plaintiff entered the United States at the Miami

International Airport.  After entering immigration and having her fingerprints

taken, the arrest by Negron and the City of Sunrise appeared on the screen.

Plaintiff was taken to a lengthy secondary inspection that took over two hours of

wait times and interviews before she was finally cleared to enter.

82. In late August 2016, plaintiff entered the United States at Miami again.  Again,

as a result of the arrest by Negron and the City of Sunrise, plaintiff was detained

for over two hours.  Plaintiff had to explain the circumstances of the arrest and

wait for clearance and verification of the dismissal of the case.  Plaintiff missed

her connecting flight to South Carolina and had to be rescheduled on a different

flight.

83. On September 20, 2016, after flying from Europe into the Philadelphia

International Airport, immigration officials detained the plaintiff for over one

hour.  The detention occurred as a result of the arrest at the instigation of the

defendants.  The plaintiff had to explain the circumstances of the arrest.

84. On November 26, 2016, after flying into the Miami International Airport,

immigration officials detained plaintiff for over two hours. The detention was the result of the arrest by Negron. Plaintiff was required to explain and justify the circumstances of the arrest and demonstrate she did not commit a crime.

85. On December 9, 2016, after flying into the Miami International Airport, immigration officials detained plaintiff as a result of the arrest by Negron and the City of Sunrise. Plaintiff spent over ninety (90) minutes waiting and being interviewed about the arrest.

86. In December 2016, plaintiff applied with the Government of Canada for an electronic travel authorization that would allow her to fly into Canada. Plaintiff, being a lawful permanent resident of the United States, may do so without a visa. However, Canadian law required plaintiff to disclose any arrest. Plaintiff had to disclose the fact that she was arrested by Negron. As a result of the disclosure, Canada placed the application on hold, required plaintiff to obtain an FBI fingerprint identity and criminal history verification, and provide court records. This required plaintiff to pay various processing fees and incur expenses. It is unclear if Canada will deny the ETA based on the arrest by Negron.

87. According to the Department of Homeland Security, plaintiff will have to enter secondary inspection when entering the United States as a result of the arrest by Negron and the City of Sunrise. As soon as her fingerprints are taken at the point of entry, the arrest flags her for verification resulting in hours of wait time for the interview.

88. Because plaintiff travels frequently and enters immigration ports in the United

States on average of 12 to 24 times per year, her detention and lost time will be approximately 24 to 48 hours per year.  In addition, plaintiff cannot schedule narrow flight windows and often cannot connect on the next available flight from the point of entry.  This will require her to spend the night in Miami, Atlanta, Chicago, Philadelphia, Dallas, or Houston almost every time she engages in international travel, incurring expenses, hotel, and transportation costs.

89. All of these delays, detentions, and costs were solely the result of the arrest and deprivation of liberty by Negron and the City of Sunrise.

90. As to the telephone, even though the charges were found to be unfounded and dismissed on February 4, 2015, Lawrence and the City of Sunrise  would not return the telephone unless plaintiff personally appeared.  Lawrence and the City of Sunrise would not accept a power of attorney and would not mail it to the plaintiff. Because plaintiff's visa was revoked as a result of the arrest by Negron, plaintiff could not retrieve the telephone.  As a result, plaintiff could not access or use the telephone from February 4, 2015, until August 2016 when she received her visa and entered the United States.  Plaintiff had to make a special trip to Sunrise, Florida, to acquire the telephone and incurred costs from rental cars and hotel rooms.  The loss of use devalued the telephone from the over $1,000 paid to its fair value in late 2016 of less than $600.00, and plaintiff paid more than that in expenses to retrieve the telephone.

91. The consequences of the actions of the defendants have resulted in an extreme and time consuming perpetual burden on the plaintiff that cannot be rectified.

**COUNT I – 42 USC 1983 action against Steven Negron and the City of Sunrise for Constitutional Violations based on False Arrest under FSS 817.568-2a**

**and COUNT II -- Common Law False Arrest Against Steven Negron and the City of Sunrise**

92. Paragraph 1 through 91 are hereby incorporated by reference and are realleged as if fully set forth again.

93. Negron and the City of Sunrise initially purported to arrest plaintiff under FSS 817.568(2)(a) which states, "Any person who willfully and without authorization fraudulently uses, or possesses with intent to fraudulently use, personal identification information concerning another person without first obtaining that person's consent, commits the offense of fraudulent use of personal identification information, which is a felony of the third degree."

94. Neither Negron nor the City of Sunrise contacted the cardholder to determine whether plaintiff maintained authorized to use or possess the credit card in question. Therefore, he could not have reasonably had probable cause that plaintiff used or possessed with the intent to use personal identification information of a third party.

95. Moreover, by Negron and the City of Sunrise's own admissions in the police report, the card provided was signed by plaintiff and plaintiff provided her own identification. As such, Negron could not have had probable cause that plaintiff "used or possessed with the intent to use personal identification information of a third party."

96. Negron's telephone call to Chase Bank, where he did not obtain the name of the

representative he spoke with, and did not ask for the terms and conditions of the account in question, did not provide him with probable cause that the third party did not authorize the plaintiff to possess or use the card.

97. On the contrary, had the City of Sunrise and Negron inquired about the terms and conditions of the account, he would have learned that the third party "may" but not "shall" ask for authorized users to be added to the account as additional cardholders.

98. In addition, had Negron and the City of Sunrise inquired about the terms and conditions of the account, he would have learned that the contract with Chase Bank specifically states that any person given the card by the cardholder to use is an "authorized user." The terms specifically stated, "If you allow someone to use your account, that person will be an authorized user. You should think carefully before allowing anyone to become an authorized user because you are allowing that person to use the account as you can. You will remain responsible for the use of your account and each card issued on your account according to the terms of this agreement. This includes your responsibility for paying all charges on your account made by an authorized user. You may request an additional card for use by an authorized user on your account...."

99. Even Negron and the City of Sunrise's misunderstanding of the difference between an additional cardholder and an authorized user did not provide him with reasonably mistaken probable cause. On the contrary, since Negron had no idea who he spoke with at the bank, and they did not tell him specifically that the cardholder did not authorize use of the card by plaintiff, the hearsay

information by an unknown person did not establish any reliable evidence for Negron to arrest the plaintiff for using or possessing the card "without authorization" from the third party since Negron never attempted to contact the cardholder.

100. Negron and the City of Sunrise never requested the bank provide them with the contact information for the cardholder so they could determine whether the possession and use of the card was authorized.

101. No facts and circumstances that were reasonably trustworthy within Negron and the City of Sunrise's knowledge would cause a prudent person to believe, under the circumstances, that the plaintiff committed an offense of using identifying information of a third party without their consent. A prudent person would have identified the third party and contacted them to determine whether authorization was granted rather than assuming it was not.

102. A reasonable officer in the same circumstances and possessing the same knowledge could not have believed that probable cause existed to arrest plaintiff for using, or possessing with the intent to use, personal information of a third party without authorization. Rather, a reasonable officer would have contacted the cardholder instead of making assumptions without knowing the facts.

103. Because Negron and the City of Sunrise lacked probable cause to arrest plaintiff, and acted unreasonably by not attempting to contact the cardholder or even determine who the cardholder was, where he was located, or whether he authorized plaintiff to possess and use the card, violated the plaintiff's right to be free from false arrest pursuant to the Fourth Amendment to the United States

Constitution.

104. Negron and the City of Sunrise's purported "unarresting" of the plaintiff did not alleviate the damages caused since she was not released, but had her items searched and seized, and was falsely arrested a second time by Negron and the City of Sunrise for possessing a telephone found during an unconstitutional search.

105. As a result of the false arrest of the plaintiff by Negron and the City of Sunrise, without probable cause, and in violation of the Fourth and Fourteenth Amendment to the United States Constitution, plaintiff was damaged including, but not limited to, the adverse events discussed above and the detention in jail.

**COUNT III – 42 USC 1983 action against Steven Negron and the City of Sunrise for Constitutional Violations based on False Arrest under FSS 812.014**

**and**

**COUNT IV -- Common Law False Arrest against Steven Negron and the City of Sunrise based on the Arrest of Plaintiff under FSS 812.014**

106. Paragraphs 1 through 105 are incorporated by reference and are realleged as if fully set forth again.

107. Although Negron and the City of Sunrise "unarrested" plaintiff for using a third party's identity without authorization, he arrested her for grand theft in violation of FSS 812.014. The elements of the statute require Negron to have probable cause of the following elements to theft: "(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:

(a) Deprive the other person of a right to the property or a benefit from the

property. (b)   Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property."

108. Neither Negron and the City of Sunrise's police report nor Negron's affidavit of probable cause provide any facts or circumstances that insinuate or reasonably infer that the plaintiff knowingly obtained or used, or endeavored to obtain or use, the property of another with the intent to deprive the other person of a right to the property.

109. Neither the police report nor Negron's affidavit of probable cause provided any facts or circumstances that insinuated or reasonably inferred that the plaintiff appropriated the property to her own use or the use of any person not entitled to use the property.

110. On the contrary, Negron stated that a third party who walked away and was not identified was the person who purchased the telephone in December 2014.

111. No facts whatsoever within Negron's police report even suggested that the plaintiff had any knowledge of the circumstances of the purchase of the telephone in December 2014.

112. Even if it could be assumed that plaintiff had "knowledge" or "intent," Negron's mere assertion that the telephone was purchased "fraudulently" did not provide any facts or circumstances to provide probable cause that the kiosk operators were denied their property rights.

113. Rather, the only claim by Negron was that the kiosk operators told him that the bank issued a "chargeback" for the telephone.

114. Negron took no steps to review the chargeback.

115. Indeed, a chargeback does not mean the telephone was stolen. A chargeback could occur because of any dispute including pricing by the merchant, quality of goods sold, etc.

116. A chargeback involves the contractual relationship between a merchant such as the kiosk operators and the merchant bank that processes credit card transactions. There are myriad chargeback codes and reasons under Mastercard and Visa regulations.

117. Nothing in Negron's affidavit of probable cause or police report indicate he even inquired about the circumstances about the alleged "chargeback" or the basis for the chargeback.

118. Had Negron investigated the "chargeback," he would have learned that no "chargeback" ever occurred and the merchant received full payment for the telephone without any dispute whatsoever. The chargeback simply did not exist.

119. No facts and circumstances that were reasonably trustworthy within Negron and the City of Sunrise's knowledge would cause a prudent person to believe, under the circumstances, that the plaintiff committed the offense of grand theft.

120. A reasonable officer in the same circumstances and possessing the same knowledge could not have believed that probable cause existed to arrest plaintiff for grand theft.

121. Because Negron and the City of Sunrise lacked probable cause to arrest plaintiff, and acted unreasonably not investigating the facts or having any information that plaintiff had intent and knowledge about the circumstances of the telephone's purchase in December 2014, Negron and the City of Sunrise

violated the plaintiff's right to be free from false arrest pursuant to the Fourth

Amendment to the United States Constitution.

122. As a result of the false arrest of the plaintiff, without probable cause, and in

violation of the Fourth and Fourteenth Amendment to the United States

Constitution, plaintiff was damaged by Negron and the City of Sunrise including,

but not limited to, the adverse events discussed above and the detention in jail.

WHEREFORE, Plaintiff demands damages in an amount to be proven at trial in excess

of $75,000 against the defendants Steven Negron and the City of Sunrise, compensatory

damages, punitive damages, costs, attorney fees, and any further relief that may be granted.

## COUNT V – 42 USC 1983 action against Steven Negron and the City of Sunrise for False Imprisonment

### and

## COUNT VI -- Common Law False Imprisonment or Wrongful Imprisonment against Steven Negron and the City of Sunrise

123. Paragraphs 1 through 122 are hereby incorporated by reference and restated as if

fully set forth again.

124. Plaintiff maintains constitutional rights under the Fourteenth Amendment to

the United States Constitution to be free from the deprivation of liberty without

due process of law and from unreasonably being seized.

125. As plaintiff was "unarrested" for unauthorized use of personal identification,

Negron and the City of Sunrise's detention of plaintiff was only for the alleged

theft described above and in Counts III and IV above, and incorporated by

reference.

126. As there was no probable cause under the totality of circumstances that plaintiff

had knowledge or intended to deprive a person of property-- especially since Negron stated that a third party who walked away made the December 2014 purchase and there was no allegation involving plaintiff as to that transaction -- there was no probable cause to detain and place plaintiff in jail.

127. Because plaintiff was falsely arrested by Negron and the City of Sunrise, the detention, transport to jail, and being left in jail for almost a full evening, night, and part of the next morning, constitutes a false imprisonment.

128. Because of the wrongful and false imprisonment of plaintiff by Negron and the City of Sunrise, in violation of plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and her common law right to be free from false imprisonment, plaintiff was damaged as described above and by the imprisonment and the effects thereof including missing her international flight to Nicaragua.

129. Negron and the City of Sunrise wrongfully and falsely deprived plaintiff of her liberty.

130. As a result of the acts of Negron and the City of Sunrise, the plaintiff suffered physical, emotional, psychological, monetary, and reputational harm as described above.

WHEREFORE, Plaintiff demands damages in an amount to be proven at trial in excess of $75,000 against Steven Negron and the City of Sunrise, compensatory damages, punitive damages, costs, attorney fees, and any further relief that may be granted.

## COUNT VII -- 42 USC 1983 Action Against Steven Negron and the City of Sunrise for Unlawful Search

131. Paragraphs 1 through 130 are incorporated by reference and are hereby realleged as if fully set forth again.

132. Negron's search of plaintiff's purse, under the guise of an inventory search based on a false arrest, pursuant to a policy of the City of Sunrise, without probable cause, deprived plaintiff of her right to be free of unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States.

WHEREFORE, Plaintiff demands damages in an amount to be proven at trial in excess of $75,000 against Steven Negron and , compensatory damages, punitive damages, costs, attorney fees, and any further relief that may be granted.

## COUNT VIII -- Action Against Steven Negron and the City of Sunrise for Unlawful Seizure of Property pursuant to 42 USC 1983

## and COUNT IX -- Trespass to Chattels Against Steven Negron and the City of Sunrise

133. Paragraphs 1 through 132 are incorporated by reference and restated as if fully set forth again.

134. Negron and the City of Sunrise's actions in seizing the telephone lawfully in possession of plaintiff deprived plaintiff of the use of the property without due process of law, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

135. In addition to being a constitutional violation, defendants Negron and the City of Sunrise interfered with the plaintiff's right of possession of a telephone that

24

was fully paid for from the kiosk operators and never subject to any chargeback.

136. The acts by Negron and the City of Sunrise in taking the telephone interfered with the plaintiff's right of possession of the chattel (iPhone).

137. Negron and the City of Sunrise intentionally performed the act in question as they knowingly took the telephone from plaintiff's possession.

138. The interference with plaintiff's right of possession was directly caused by the acts of Negron and the City of Sunrise, to wit, they physically took the telephone from plaintiff without her authorization.

139. The plaintiff was damaged by the actions of the defendants in that the telephone, after over 18 months in storage, seriously diminished in value.  In addition, plaintiff did not have access to her files and pictures on the telephone.

WHEREFORE, Plaintiff demands damages in an amount to be proven at trial in excess against defendants Negron and the City of Sunrise, compensatory damages, punitive damages, costs, attorney fees, and any further relief that may be granted.

## COUNT X -- Action Against Neil Lawrence, Steven Negron, and the City of Sunrise for Unlawful Seizure of Property and Taking Without Due Process pursuant to 42 USC 1983

### and

## COUNT XI -- Trespass to Chattels Against Neil Lawrence, Steven Negron, and the City of Sunrise

140. Paragraphs 1 through 139 are hereby incorporated by reference and restated as if fully set forth again.

141. Lawrence, Negron, and the City of Sunrise by February 5, 2015, knew that all charges against plaintiff were terminated once the State Attorney filed a "no information" notice in the case.

142. By February 5, 2015, Lawrence, Negron, and the City of Sunrise knew that the telephone was lawfully in the possession of plaintiff.

143. Based on information, by February 5, 2015, Lawrence, Negron, and the City of Sunrise conducted an investigation and learned that the merchant never received a "chargeback" and was fully paid for the telephone.

144. Lawrence and the City of Sunrise acknowledged that the plaintiff could pick up the telephone from the police station.

145. However, when Lawrence and the City of Sunrise learned that plaintiff could not personally pick up the telephone, they refused to allow her to appoint, via lawful power of attorney, a third party to retrieve the telephone for her.

146. Lawrence, Negron, and the City of Sunrise knew that plaintiff could not physically pick up the telephone, but they would not make other arrangements for delivery of the property to plaintiff, such as mailing it to her at her own expense, despite her requests.

147. Rather, Lawrence and the City of Sunrise insisted on a court order even though obtaining such an order would be difficult as plaintiff was in Nicaragua and could not enter the United States, could not attend any hearing, etc.

148. Moreover, Lawrence knew that obtaining a court order would require that plaintiff to hire legal counsel, which would be costly over a $1,000 telephone.

149. Thus, Lawrence, Negron, and the City of Sunrise simply refused to make reasonable accommodations for plaintiff to obtain the property lawfully in her possession and wrongfully taken by the defendants.

150. Because plaintiff could not obtain a new visa to enter the United States until

August 2016, she was deprived of the possession of the telephone for over 15 months.

151. The actions of Lawrence, Negron, and the City of Sunrise constitute a taking without due process and an unlawful seizure in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

152. The acts by Lawrence, Negron, and the City of Sunrise interfered with the plaintiff's right of possession of the chattel (iPhone 6+).

153. Lawrence, Negron, and the City of Sunrise intended to perform the act bringing about the interference with the plaintiff's right of possession. Specifically, after learning that the telephone was fully paid for and improperly seized by Negron and the City of Sunrise, the defendants would not take steps to return the telephone to the person who maintained the telephone and could not, through no fault of her own, personally pick it up.

154. The interference with plaintiff's interests were caused by the acts of the defendants in not returning the telephone and placing the burden on the plaintiff to physically retrieve the telephone -- which she could not do -- when the defendants wrongfully possessed the telephone.

155. The plaintiff was damaged by the actions of the defendants in that the telephone, after over 18 months in storage, seriously diminished in value. In addition, plaintiff did not have access to her files and pictures on the telephone during the time the defendants wrongfully interfered with plaintiff's possession of the telephone.

WHEREFORE, Plaintiff demands damages in an amount to be proven at trial in excess against defendants Negron and the City of Sunrise, compensatory damages, punitive damages, costs, attorney fees, and any further relief that may be granted.

Respectfully submitted,

*Karla Corea*

Karla Corea
382 NE 191st Street, #10287
Miami, FL 33179-3899
Telephone: 501-436-6550
karla@managua.attorney

PLAINTIFF

# PRIORITY
# ★ MAIL ★
# EXPRESS™

OUR FASTEST SERVICE IN THE U.S.

## FLAT RATE
## ENVELOPE

ONE RATE ★ ANY WEIGHT™

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

EP13F Apr 2015
OD: 12 1/2 x 9 1/2

P S 1 0 0 0 1 0 0 0 0 0 6

*EMS*

* Money Back Guarantee to U.S., select APO/FPO/DPO, and select International destinations. See DMM and IMM at pe.usps.com for complete details.
‡ Money Back Guarantee for U.S. destinations only.
    ᵡ For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.

## VISIT US AT USPS.COM®
### ORDER FREE SUPPLIES ONLINE




usps.com
$22.95
US POSTAGE
Flat Rate Env

9470 1036 9930 0028 2256 02 0229 5000 0053 3401

## PRIORITY MAIL EXPRESS 1-DAY™

01/05/2017          Mailed from 19101          092S000000315

DOCUMENT PROCESSING
ABC AGENTS INC.
PO BOX 37835
PHILADELPHIA PA 19101-0635

Scheduled Delivery Date: 01/06/2017

0007

WAIVER OF SIGNATURE
NO DELIVERY SATURDAY
SCHEDULED DELIVERY 3:00 PM

C028

SHIP
TO:
CLERK OF COURT
UNITED STATES DISTRICT COURT
701 CLEMATIS ST RM 202
WEST PALM BCH FL 33401-5113



### USPS TRACKING #

9470 1036 9930 0028 2256 02

EQUEST




B|c 1/7



UNITED STATES
POSTAL SERVICE